Modified.

## In re RYDER.

### Patent Appeal No. 3356.

Court of Customs and Patent Appeals.
Dec. 10, 1934.

Emery, Booth, Varney & Whittemore, of New York City (Nichol M. Sandoe, of New York City, of counsel), for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

BLAND, Associate Judge.

Claims 11 to 16, inclusive, being all of the claims in appellant's application for a patent for a method of distilling mineral oils, were rejected by the Primary Examiner of the United States Patent Office, which rejection was affirmed by the Board of Appeals. It is from the decision of the Board that appellant has appealed to this court.

The references relied upon by the Examiner are: Trumble, 1262875, April 16, 1918; Rogers et al., 1615407, January 25, 1927; Hanna, 1729215, September 24, 1929; French (British), 196306, of 1923.

Appellant's application shows the apparatus for carrying out his method. He uses a tubular heater from which the heated oil is discharged into a separator. The separator is maintained at a temperature which appellant refers to in his claims as being "a temperature sufficient to prevent material condensation of said vapors." The vapors generated in the separating chamber are withdrawn near the top through a conduit by a vacuum pump, and the liquid residue is withdrawn through a conduit at the bottom of the structure by the use of a pump.

Appellant urges that his process relates to the comparatively recent development of distilling oil by the use of very high vacuums in which lubricating oils may be produced directly by distillation; that high vacuum distillation is taught by a pioneer patent granted to one John E. Schulze in 1923, No. 1448709; that in low vacuum processes the same problems are not confronted as those which confront the user of the high vacuum process; and that in the latter process it was observed that a "curious phenomena" took place, to wit, there was a tendency for the oil being distilled suddenly and without warning to burst into a mass of froth and foam which completely filled the passages leading from the still through the condensers to the distillate receivers, thus causing unvaporized oil to be carried over and mixed with the distillate.

Appellant contends that he is the first to solve this problem. He states that he has solved it by an extremely simple but very effective process which consists in using the combination of a high vacuum with an absolute pressure not exceeding fifty millimeters of mercury, and a maintenance of the temperature of the separator chamber "sufficient to prevent material condensation of said vapors." Appellant points out that his solution of the problem came about from the fact that he observed that the principal cause of frothing and foaming was the fact that in an apparatus such as Rogers et al., some of the vapors would condense on the cold walls of the separating chamber, and that the condensed liquid would gradually collect and run down the walls until it mixed with the residue, which, being hotter than the condensed liquid, would revaporize it, thus producing froth and foam. He thereupon set about keeping the walls of the separating chamber at a temperature sufficient to prevent the material condensation of the vapors. This he did, according to his disclosure, by mounting the separating chamber within a flue so as to keep the walls of said separator at a desired temperature, thereby preventing the undesired quick condensation where the vapors came in contact with the exposed walls of the separator used in prior art methods.

Claim 11 is regarded as illustrative and reads:

"11. The method of distilling mineral oils which comprises heating said oils under super-atmospheric pressure in a tubular heater, and discharging said heated oils into a chamber maintained at an absolute pressure not exceeding fifty millimeters mercury, whereby certain portions of said oil immediately flash into vapors, withdrawing said vapors near the top of said chamber, withdrawing the liquid residue near the bottom of said chamber, said heated oils being discharged into said chamber at a point intermediate the withdrawal points for vapors and residue respectively, *said chamber being maintained at a temperature sufficient to prevent material condensation of said vapors.*" (Italics ours.)

The patent to Trumble relates to a process of treating petroleum which involves forcing oil under pressure through a heater and through a reducing valve into a vaporizer of lower pressure. The vaporizer is shown in Trumble's patent as being located in the stack of the furnace and heated by the hot gasses.

Appellant argues that Trumble did not solve the problem because he did not have the problem confronting him; that is to say, his was not a high vacuum process, and foaming did not take place.

The patent to Rogers et al. relates to a process of continuous distillation of crude petroleum oils and involves the pumping of oil through a heater into a vaporizing drum. The vapors are withdrawn from the top of the chamber and the residue is taken out at the bottom. An absolute pressure of from one to three inches of mercury is maintained in the vaporizing drum. No mention is made in the patent of the temperature in the drum. Since Rogers et al. state in their patent that the oil is pumped through the heating coils, the Examiner assumed that this was done at superatmospheric pressure.

The patent to Hanna also relates to the distillation of petroleum oils, and the method comprises heating the oil under pressure and discharging it into a vaporizing chamber in which a vacuum as high as twenty-six inches, and a temperature sufficiently high to prevent condensation, are maintained.

The applicant points out that Hanna's vacuum is considerably lower than the applicant's. The Examiner regarded this as a matter of degree. Hanna shows a burner for preheating the coils and a burner for heating the still in which the vapors are formed. Appellant argues that Hanna's process relates to operations in the low vacuum field, and that the frothing problem there is not as acute as it is in the high vacuum field.

The British patent to French is for a process of distilling petroleum oils by heating the same in a tubular heater and discharging the same into a separating chamber which, according to the teachings of the patent, may be heated and maintained under vacuum. Nothing is said about the pressure in the heating coil. The Examiner assumed that the oil is under pressure due to the elevation of the oil tank, also due to the fact that the oil is being forced through a passage of small cross section. This patent also shows a method similar to that of applicant in the fact that the residue is "very promptly removed from the separating chamber which is also heated."

It will be noticed at once that the claims do not call for any particular means of maintaining the temperature sufficient to prevent material condensation of the vapors. It seems to be true that it is not disclosed in the prior art cited that any of the patentees distilled oils under high vacuum pressure with the use of a separator, the outside walls of which were completely covered in order to prevent undesirable condensation. The patent to French shows that the greater part of the walls are covered. This patent is probably the nearest reference on this particular phase of appellant's application.

The Board of Appeals after discussing the references said:

"Applicant contends that Rogers et al. is the only patent relied on by the examiner which employs a high vacuum, the remaining patents operating at atmospheric pressure or under low vacuum. The examiner however considers that the use of a higher and lower vacuum is merely a matter of degree, and that it is obvious a vaporizer may be maintained at a temperature to prevent condensation of the vapors which it is desired to remove. The examiner points out in his statement that the step of immediately withdrawing the liquid residue is disclosed by French, the feature of introducing the heated oil into a vaporizer at an intermediate point in its height and withdrawing vapor from the top and liquid residue from the bottom are common expedients in the art of mineral oil distillation and are also disclosed in the references relied on.

"We have carefully considered applicant's brief and are not unmindful of the alleged advantages of the method covered by the appealed claims. The references relied on by the examiner, however, disclose the forcing of oil, necessarily it seems to us under some pressure, through a heating coil into a vaporizer maintained under a reduced pressure, Hanna and French under an unspecified vacuum and Rogers et al. under a high vacuum; and we must agree with the examiner that it would not be a matter of invention to use a high vacuum in these references employing a low vacuum or atmospheric pressure. The maintaining of a sufficient temperature in the vaporizer to prevent condensation of the vapors which it is desired to remove seems to us to be an obvious step, especially in view of the disclosure in Hanna, French, and Trumble of heat vaporizers. The introduction of the heated oil at a point intermediate the height of the vaporizer and the withdrawal of vapors from the top and the immediate withdrawal of liquid residue from the bottom seem to us, as they did to the examiner, to be obvious expedients, especially in view of the disclosures in the references relied on. These various steps being old in the prior art, we are not convinced that the combining of them

produces any unobvious result and must agree with the examiner that the appealed claims are not allowable."

We agree with the decision of the Board of Appeals that there is no invention shown in appellant's application over the prior art cited, and we agree that it would be an obvious step in view of the prior art disclosures to maintain sufficient temperature in all parts of the vaporizer to prevent undesirable condensation of the vapors. We think that all the other features relied upon for patentability of the various claims are disclosed in the prior art, and that a combination of such features did not involve the exercise of the inventive faculty.

The decision of the Board of Appeals is affirmed.

Affirmed.